James H. Hohenstein
Marie E. Larsen
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: jim.hohenstein@hklaw.com
       marie.larsen@hklaw.com

*Attorneys for Plaintiffs,*
*Western Bulk Carriers AS*
*Western Bulk Chartering AS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WESTERN BULK CARRIERS AS and WESTERN BULK CHARTERING AS individually and on behalf of M/V LONG LUCKY (IMO No. 9471654)<br><br>                                    Plaintiffs,<br><br>- against -<br><br>O.W. BUNKER & TRADING A/S, O.W. SUPPLY & TRADING A/S, U.S. OIL TRADING, LLC and ING BANK N.V.<br><br>                                    Defendants. | **15 CV 8304**<br><br>15 Civ. _____ (   ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR RESTRAINING ORDER PURSUANT TO 28 USC § 2361

Western Bulk Carriers AS ("WB Carriers") and Western Bulk Chartering AS ("WB Chartering") (collectively, "Western Bulk" or "Plaintiffs") file this memorandum of law in support of their Application for a Restraining Order Pursuant to 28 U.S.C § 2361 of the Federal Interpleader Act and posting security under Rule E(5)(a) of the Supplemental Rules for Admiralty and Maritime Claims.

## STATEMENT OF FACTS

Plaintiffs filed their Complaint for Interpleader pursuant to 28 U.S.C. § 1335 to resolve competing claims to amounts owed for the sale and delivery of fuel to the vessel M/V Long Lucky (the "Vessel") in the Port of Tacoma, Washington on November 1, 2014 (the "Fuel Deliveriy"). As set forth in their Complaint for Interpleader, filed herewith, Plaintiffs and the Vessel are faced with uncertainty as to the proper recipient of funds owed for the Fuel Delivery.

On or about October 24, 2014, WB Carriers ordered bunkers to be loaded onboard and consumed by the Vessel from O.W. Bunker & Trading A/S ("O.W. Bunker") as set forth in the Complaint. The supplier for the Fuel Delivery was listed on the Sales Order Confirmation as "U.S. Oil" (i.e., defendant U.S. Oil Trading LLC ("USOT")). The bunkers were delivered to the Vessel in the Port of Tacoma, Washington on November 1, 2014. A bunker delivery receipt for the Fuel Delivery was issued by USOT. WB Carriers received an invoice from O.W. Bunker requesting payment to an ING Bank N.V. ("ING") account. The bunkers were supplied by O.W. Bunker based on the terms of a Master Agreement between O.W. Supply & Trading A/S (together with O.W. Bunker, "O.W. Denmark") and WB Chartering which incorporated the standard O.W. terms and conditions.

On November 7, 2014, O.W. Bunker and certain of its Danish subsidiaries and affiliates filed for bankruptcy in their home jurisdiction of Denmark. Pursuant to an Omnibus Security Agreement dated December 19, 2013 between O.W. Bunker and certain of its subsidiaries (believed to include O.W. Far East, O.W. USA and O.W. North America), and ING as Security Agent, the O.W. entities have allegedly assigned certain rights in respect of their supply contracts as security to ING.

Due to the bankruptcy filings of O.W. Denmark and other O.W. entities, there is a significant risk that O.W. Denmark, USOT, ING or another party will take action to collect the funds owed for the bunkers. Indeed, demands for payment and threats of arrest have been received from ING and USOT. *See* Comp., Exs. 6 and 7.

Under United States maritime law, the contract supplier of necessaries, including fuel, to a vessel obtains a maritime lien against that vessel. Additionally, under certain circumstances, a physical supplier or transporter (such as USOT) may also assert a maritime lien on that vessel. As such, a number of claimants have already or may allege rights to amounts owed for the sale of necessaries to the Vessel, giving rise to a maritime lien claims under the Maritime Lien and Commercial Instruments Act, 46 U.S.C § 31301 *et seq.* There also exists the alleged *in personam* rights of action asserted by ING and possibly O.W Denmark.

Plaintiffs cannot ascertain whether the amount owed should be paid to O.W. Denmark, USOT, ING or some other party in order to extinguish all maritime liens against the Vessel for the Fuel Delivery and to prevent the Vessel's arrest or attachment in this District or elsewhere as well as discharging Western Bulk's *in personam* liabilities (if any).

The Vessel calls in the United States and could face arrest pursuant to Supplemental Admiralty Rule C or attachment pursuant to Rule B by one or more of the defendants claiming to assert a maritime lien, which would cause harm to Plaintiffs and the Vessel, delay the Vessel, affect innocent third parties with interests in the Vessel's cargo and generally inhibit maritime commerce. Similarly, allowing *in personam* actions to proceed in possibly multiple jurisdictions makes little sense given the presence of funds in this action as well as all the (known) necessary parties.

## ARGUMENT

### THE CLAIMANTS SHOULD BE ENJOINED FROM *IN REM* AND *IN PERSONAM* ACTIONS IN CONNECTION WITH THE FUEL DELIVERY

An interpleader action protects a disinterested stakeholder from multiple claims to a limited fund by providing a forum and procedure to adjudicate all competing interests. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 534 (1967). Section 1335 expressly anticipates that interpleader is appropriate when a claimant "is claiming or may claim to be entitled to" funds at issue. Further, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." *Id.* at 533.

Once the requirements of interpleader are satisfied, the Court may issue an injunction to enjoin the claimants from instituting prosecuting any state or federal proceeding involving the subject property. *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977) With respect to injunctions, the Federal Interpleader Act provides:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants *and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court.* . . .
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361. (Emphasis added.)

The purpose of § 2361 is to relieve the stakeholder from the burden of defending multiple and conflicting actions and to make it possible for the Court to distribute the funds payable by the plaintiff, by entering an order restraining claimants from instituting or prosecuting proceedings in any state or federal court affecting the property involved in the interpleader. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R L.*, 699 F. Supp. 2d 1344, 1351 (S.D.

Fla. 2010). Injunctive relief will prevent a multiplicity of action and reduce the possibility of inconsistent determinations or the inequitable distribution of the funds. *U.S. v. Major Oil Corp.*, 583 F.2d 1152, 1158 (10th Cir. 1978). This injunctive power is nationwide and is intended to halt any proceeding deemed inconsistent with the interpleader action. *Id.; see also O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (enjoining garnishment and foreclosure actions).

District courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the order." *Orseck*, 699 F. Supp. 2d at 1351; *see also Commerce & Indus Ins Co. v. Cablewave Ltd*, 412 F.Supp. 204, 206 (S.D.N.Y. 1976); 7 Wright and Miller, *Federal Practice and Procedure* § 1717. Accordingly, this Court may enjoin future arrests of the Vessel in any District Court and require the claimants to resolve their claims in this Court, a forum with jurisdiction where all proper parties are joined and the *res* is within the Court's jurisdiction. *See Holcomb v. Aetna Life Ins. Co.*, 228 F.2d 75 (10th Cir. 1955).

The injunction provided by 28 U.S.C. § 2361 is excepted from the requirements of Rule 65(b) of the Federal Rules of Civil Procedure by Rule 65(e), which provides, in relevant part: "These rules do not modify ... 28 U.S.C. § 2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader." Fed. R. Civ. P. 65(e). *See also Mitchum v. Foster*, 407 U.S. 225, 234 (1972); *United States v. Sentinel Fire Ins. Co*, 178 F.2d 217, 231 (5th Cir. 1949). Accordingly, this Court has the power to enjoin, **without notice**, other actions seeking a determination of the rights being contested. *Prudential Ins Co. of Am. v Shawver*, 208 F. Supp. 464, 471 (W.D. Mo. 1962); *Minnesota life Ins. Co. v. Creasy*, No. 14-11, 2014 WL 715556 (M.D.Ga Feb. 24, 2014) (issuing restraining order without notice); *Aetna Cas & Sur. Co. v. Ahrens*, 414 F.Supp. 1235, 1242 (S.D.Tex. 1976) (issuing a restraining order without

notice "to preserve the status quo" while considering the Court's interpleader jurisdiction and allowing for service of notice of the action after entry of injunction).

Many courts have permitted interpleader in the admiralty context. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550 (5th Cir. 2004) (Where two Rule B actions were commenced against freight owed, charterer filed action for interpleader, attachment actions were consolidated, and charterer was granted leave to deposit into court registry and was discharged from the lawsuit). *See also Schirmer Stevedoring Co. Ltd. v. Seaboard Stevedoring Corp*, 306 F.2d 188 (9th Cir. 1962) (where libel *in personam* and libel *in rem* filed for stevedoring services); *Defense Plant Corporation v. United States Barge Lines*, 145 F.2d 766 (2d Cir. 1944).

The Defendants-claimants' right to assert a maritime lien (and any *in personam* claims) will be fully preserved as the claims can be asserted against the funds in the court's registry. *See e.g Starboard Venture Shipping, Inc. v. Cainomar Transp., Inc*, 1994 A.M.C. 1320 (S.D.N.Y 1993) (property already held in *custodia legis* can be attached) (citing *The Lottawanna*, 87 U.S (20 Wall.) 201 (1873) and *Ravenna Tankers Pte. v. Omni Ships Pte Ltd*, 2014 A.M.C. 1190 (E.D. La. 2013) (held claimant's lien can attach to funds in the Court Registry as funds were substituted *res* for ship)). The funds on deposit in the registry of the Southern District of New York may be deemed security provided by the Plaintiff individually and on behalf of the Vessel under Rule E of the Supplemental Rules for Admiralty and Maritime Claims, just as though a claimant had in fact physically served a warrant of arrest on one of the Vessel or arrested the Vessel outside the United States.

Where, as here, a stakeholder pleads Rule 9(h) and seeks to deposit security sufficient under Rule E(5)(a) to secure the *in rem* claims of third parties in order to release a vessel or prevent its arrest it may do so through 28 U.S.C. § 1335. By depositing the substitute *res* in an

amount determined to be sufficient under Rule E(5)(a). Plaintiffs invoke the admiralty jurisdiction of the District Court. Courts sitting in admiralty have broad discretion to fashion equitable remedies. These rightfully include issuing orders enjoining arrest of a vessel anywhere in the world for a claim in which the owner has posted substitute security.[1] As such, the power of the District Court may reach beyond the express language of 28 U.S.C. § 2361 when the Court has determined the substitute *res* under Rule E(5)(a) has been deposited in the court registry. Plaintiffs seek to deposit such amount in this case in order to prevent the arrest of the Vessel by defendants anywhere in the world on a claim for the Fuel Delivery.

Western Bulk and the Vessel are faced with an actual threat of litigation for the payment on the exact same fuel purchase consisting of the risk of the arrest of the Vessel at any port in the United States or elsewhere by any of the many claimants to the subject funds, making it impossible for Plaintiffs or the Vessel as innocent stakeholders to do business. An arrest or attachment is not an absolute right but rather serves to provide a maritime claimant with jurisdiction over a party and security for its maritime claim. *See Vitol v. Primerose Shipping Co. Ltd*, 708 F.3d 527, 536-37 (4th Cir. 2013); *The Rosinco*, 2002 A.M.C. 1157 (E.D. Wis. 2001). As Plaintiffs individually and acting on behalf of the Vessel by this interpleader submits to this Court's jurisdiction for the amount claimed for the Fuel Delivery and seeks to provide substitute *res* reflecting the very funds which will secure claimants' maritime lien and other claims, the balance of equities weighs in favor of enjoining arrest or attachment or other actions against Western Bulk or the Vessel. An injunction will protect the jurisdiction of this Court and will prevent a multiplicity of actions against Western Bulk and the Vessel, who disclaim any interest

---

[1] To the extent that the relief sought by Western Bulk would enjoin the defendants/claimants from initiating actions against Western Bulk and/or the Vessel in jurisdictions outside the U.S., Western Bulk submits such relief is well within the Court's equitable jurisdiction. *See e.g. T. Jai Sys 2006 Ltd v. Amdocs Software Sys Ltd*, 2013 WL 6409476, No. 13 Civ. 5356 (HB) *4 (S.D.N.Y. Dec. 9, 2013) ("[E]quity along with the threats of inconsistency and a race to judgment also support an anti-suit injunction.")

7

in the funds and are unable to determine the validity of any claimant's possible maritime lien on the Vessel or other claims related to the funds at issue.

Furthermore, the proposed interpleader amount is sufficient to constitute adequate security as substitute *res* for any claimants' *in rem* maritime lien claims including any claim by O.W Denmark, USOT or ING. A good example of this principle is the very common use in maritime cases of security in the form of a Letter of Undertaking ("LOU"):

> Generally, once a LOU is issued, the letter becomes a complete substitute for the *res* and the maritime lien transfers from the vessel to the LOU. *Maritima Antares, S.A. v. The Vessel ESSI CAMILLA*, F. Supp. 694, 695 (E.D. Va. 1986) ("[A]s a substitute for the *res*, [it] ha[s] the effect of transferring the maritime lien from the vessel to the security fund."); *see also Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) ("In accordance with generally accepted practice, this Letter of Undertaking becomes the substitute *res* for the value of [the] claim.").

*Petroleos Mexicanos Refinancion v. M T King A*, 554 F.3d 99, 104 (3d Cir. 2009). An arrest is not required in order to transfer a maritime lien claim from the vessel to a substituted *res* indeed, this often takes place upon the mere threat of an arrest. *See Astra Oil Co., Inc. v. Rover Navig., Ltd.*, 344 F. 3d 276, 278 (2d Cir. 2003) (after vessel arrest threatened, LOU issued). As such, it is appropriate that the interpleader funds can become a substitute *res*, especially given that Plaintiffs and the Vessel have sought the end result of the posting of security in a maritime action, i.e., the protection of the vessel from further arrest anywhere in the world for payment arising from the Fuel Delivery.

Supplemental Admiralty Rule E provides that "...the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties, conditioned to answer the judgment of the court... the bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 per

cent per annum." Supp. R. E(5)(a). Plaintiffs, individually and on behalf of the Vessel, have made an application to deposit $122,712.20 into the registry of this court, which is the amount due for the supply of bunkers to the Vessel, plus 6% interest, thereby complying with the security requirements of Supplemental Admiralty Rule E. When and if any party appearing in response to this interpleader makes a showing that the amount is not reasonable for the claim at issue this Court could issue a supplemental order increasing the funds on deposit as appropriate.

Without the restraining order, Western Bulk may be required to post security multiple times as a result of multiple arrest or attachment actions against the Vessel. Requiring Plaintiffs to secure double liability for each single fuel delivery would be inequitable and even unconstitutional. "It is the object of courts to prevent the payment of any debt twice over." *Harris v. Balk*, 198 U.S. 215, 226 (1905); *see also Embree v. Hanna*, 5 Johns 101, 102 (1809) ("Nothing can be more clearly just, than that a person who has been compelled, by a competent jurisdiction, to pay a debt once, should not be compelled to pay it over again"). Applying this principle, the Supreme Court warned that even where the court has *in rem* jurisdiction, "the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment." *Western Union Telegraph Co. v Pennsylvania*, 368 U.S. 71, 75 (1961). This principle has been recognized by courts in this state and District in many contexts. *Shaheen Sports, Inc. v. Asia Ins. Co.*, 11-920, 2012 WL 919664 at *8 (S.D.N.Y. Mar. 14, 2012) (noting party's "concern for potential inconsistent judgments and double liability is therefore very real" and that prevention of double liability is a "judicial priority") (citing cases). *See also South Pacific Shipping Co. Ltd. Inc. v Redi-Fresh Produce*

*Inc.*, No. 14-4156 (LAK) (AJP) Dkt. No. 34 at p. 12 (Report and Recommendation granting sanctions in an interpleader case where party sought to hold garnishee doubly liable).

## CONCLUSION

WHEREFORE, interpleader Plaintiffs Western Bulk Carriers AS and Western Bulk Chartering AS, individually and on behalf of the vessel M/V Long Lucky, request that this Court enter an order pursuant to 28 U.S.C. § 2361 restraining any claimants now or later known from instituting and prosecuting any proceeding against Western Bulk Carriers AS and/or Western Bulk Chartering AS *in personam*, or against the Vessel *in rem*, including but not limited to the arrest or attachment of the Vessel pursuant to Supplemental Admiralty Rule C or Rule B in any United States District Court, or similar action against the Vessel or Western Bulk elsewhere in the world, based on the assertion of any claim related to the provision of bunkers ("necessaries") described herein as the Fuel Delivery, and for such other and further relief as this Court deems just and equitable.

Dated: New York, New York
October 21, 2015

HOLLAND & KNIGHT LLP

By: _____
James H. Hohenstein
Marie E. Larsen
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: jim.hohenstein@hklaw.com
marie.larsen@hklaw.com

*Attorneys for Plaintiffs, Western Bulk Carriers AS and Western Bulk Chartering AS, individually and on behalf of M/V LONG LUCKY (IMO No 9471654)*

#37550684_v1